FILED
United States Court of Appeals
Tenth Circuit

August 11, 2014

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

JOHN THOMAS WATTERS,

Plaintiff-Appellant,

v.

DEPARTMENT OF JUSTICE;
DEPARTMENT OF JUSTICE -
CRIMINAL DIVISION; FEDERAL
BUREAU OF INVESTIGATION;
EXECUTIVE OFFICE OF THE UNITED
STATES ATTORNEY; DEPARTMENT
OF THE TREASURY; BUREAU OF
ALCOHOL, TOBACCO, FIREARMS,
EXPLOSIVES; INTERNAL REVENUE
SERVICE,

Defendants-Appellees.

No. 13-5121
(D.C. No. 4:10-CV-00270-GKF-PJC)
(N.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **PORFILIO** and **O'BRIEN**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

John Thomas Watters brought this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, seeking records that might exonerate him from his federal drug-related convictions. The district court granted summary judgment to Defendants the Federal Bureau of Investigation (FBI), the Executive Office of the United States Attorney (EOUSA), the Department of Justice-Criminal Division (DOJ), the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the Internal Revenue Service (IRS). Mr. Watters appeals, and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Mr. Watters is presently in federal custody serving a 240 month sentence for crimes committed while participating in a marijuana grow operation. We affirmed his convictions on direct appeal, *United States v. Watters*, 237 F. App'x 376 (10th Cir. 2007), and after the district court denied his 28 U.S.C. § 2255 motion, we denied a certificate of appealability, *United States v. Watters*, 363 F. App'x 653 (10th Cir. 2010).

During the course of his post-conviction proceedings, Mr. Watters submitted identical FOIA requests to the FBI, the EOUSA, and the DOJ, seeking any material concerning him from 2002 through 2007. He also requested information concerning persons who he claims were involved in his criminal activities, namely Michelle Quisenberry, Kenneth Jones, and Jerry Harris. After much back and forth, including various inter-agency referrals, Defendants searched their respective databases and

processed hundreds of pages of material. Much of that material was released to Mr. Watters in full or redacted form, but much of it was not. Defendants claimed the redacted and undisclosed information was protected under certain FOIA exemptions.

Mr. Watters initiated this action to compel full disclosure. Claiming that Defendants were "in direct violation of the [FOIA]," he sought an "Order requiring prompt disclosure and release of . . . all . . . documents abusively withheld from [him]." R., Vol. I at 136. Defendants moved for summary judgment, arguing that they had performed adequate searches and that all information withheld from Mr. Watters was exempt from disclosure under relevant provisions of the FOIA. They also argued that Mr. Watters had no cognizable claim against the EOUSA because he failed to pay his processing fees and did not perfect an administrative appeal. To support their motion for summary judgment, Defendants filed declarations detailing how the FOIA requests were processed and which exemptions they invoked to justify withholding the information.

Based on Defendants' declarations, the district court determined that Defendants had conducted adequate searches and that any information not released to Mr. Watters was lawfully withheld under specific FOIA exemptions. The court also concluded that Mr. Watters had no cognizable claim against the EOUSA because he neither paid his required processing fee nor perfected an administrative appeal. Thus, the court granted Defendants' motion for summary judgment. Mr. Watters now challenges the district court's decision.

II

*A. Legal Standards*

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court, drawing all reasonable inferences in favor of the nonmoving party—in this case, in favor of [Mr. Watters]." *Hull v. Internal Revenue Serv.*, 656 F.3d 1174, 1177 (10th Cir. 2011). The "FOIA provides the public a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions." *Id.* (internal quotation marks omitted). It is the agency's burden to show that undisclosed information is protected by a particular exemption. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). We construe the FOIA broadly in favor of disclosure and "narrowly circumscribe[]" its exemptions. *Id.* "'[A]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Id.* (quoting 5 U.S.C. § 552(b)).[1]

---

[1]     Although Mr. Watters initiated this action under both the FOIA and the Privacy Act, the district court evaluated the propriety of the withheld information only under the FOIA. Mr. Watters does not challenge that approach on appeal, nor does he contest any Privacy Act exemption. Indeed, his opening brief makes only isolated references to the Privacy Act. *See* Aplt. Br. at 3, 5, 16, 26. We recognize that Mr. Watters is a pro se litigant and that his pleadings are entitled to a liberal construction. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Nevertheless, he is still obligated to comply with the same procedural rules that govern other litigants. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Because Mr. Watters has failed to adequately develop any issue arising under the Privacy Act, we decline to consider that theory. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to

(continued)

- 4 -

"To satisfy its burden of proof under [the] FOIA, an agency typically submits affidavits. These:

> [a]ffidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if the information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents.

*Hull*, 656 F.3d at 1177-78 (quoting *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)); *see also Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 942 (10th Cir. 1990) (explaining that court may rely on detailed affidavits to resolve FOIA summary judgment motions).

*B. Exhaustion*

Before getting to the merits, we initially note, as a prudential matter, that Mr. Watters did not exhaust his administrative remedies against the EOUSA. *See Hull*, 656 F.3d at 1181-83 (explaining that exhaustion under the FOIA is a prudential consideration rather than jurisdictional, but it nevertheless "remains a hurdle that FOIA plaintiffs must generally clear in order to obtain relief"). First, Mr. Watters did not pay his administrative processing fees to the EOUSA. When he filed his request, the EOUSA notified him that by making it he was agreeing to pay $25.00 in search fees and would be notified if his fees exceeded that amount. After

consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

locating many documents, the EOUSA alerted Mr. Watters that his estimated search fees would be $140.00, which he also agreed to pay. But after the EOUSA calculated a final fee of $112.00 and released the information to Mr. Watters, he refused to pay.

Second, and perhaps more importantly, Mr. Watters failed to perfect a proper administrative appeal. After the EOUSA processed Mr. Watters' request, it informed him that he could file an appeal with the Office of Information Policy (OIP). The EOUSA instructed him how to file his appeal and alerted him that it must be received by OIP within sixty days. Rather than heed those instructions, however, Mr. Watters requested an appeal with the EOUSA. Although no appeal was filed, he amended his complaint and added allegations against the EOUSA. But this deprived OIP of an opportunity to affirm the EOUSA's decision, correct any errors, and add to the record upon which Mr. Watters now asks us to review the propriety of the EOUSA's decision. *See Hull*, 656 F.3d at 1183 (holding that review may not be barred where the purposes of exhaustion—"namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review—have all been served" (internal quotation marks, brackets, and ellipsis omitted)). Under these circumstances, we decline to review any claim against the EOUSA.

*C. Adequacy of Searches*

As for the other Defendants, they must show that their "search for responsive documents was adequate, which is determined under a standard of reasonableness,

and is dependent upon the circumstances of the case." *Trentadue v. FBI*, 572 F.3d 794, 797 (10th Cir. 2009) (brackets, ellipsis, and internal quotation marks omitted). We conclude the searches conducted here were adequate and reasonably calculated to uncover all relevant documents.

According to a declaration signed by Dennis J. Argall, the Assistant Section Chief in the FBI's Records Management Division, the FBI assigned Mr. Watters' request "FOIPA Number 1136453-000." R., Vol. I at 205. The FBI advised Mr. Watters that it was searching the indices of its Central Records System, which Mr. Argall described in detail over more than three pages of his declaration. *See id.* at 207-210. Mr. Argall also described with precision the parameters of the searches conducted. He explained that the searches yielded responsive information located in an investigative file that the FBI initially deemed exempt from disclosure under 5 U.S.C. § 552(b)(7)(A) (exempting law enforcement records that "could reasonably be expected to interfere with enforcement proceedings"). The FBI later determined that exemption "went away" after Mr. Watters initiated this litigation. *Id.* at 206. Hence, the FBI processed 605 pages and released those documents to Mr. Watters, subject to various exemptions that were itemized in a *Vaughn* index. *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

John E. Cunningham, III, an attorney for the DOJ, stated that Mr. Watters' FOIA request was initially closed because he failed to provide information needed to process his request. When he submitted that information, the DOJ opened a new file,

"CRM-20100074P." *Id.* at 240.  The DOJ then searched its central index of records, which Mr. Cunningham indicated was "the most comprehensive system maintained by the Criminal Division." *Id.*  A search using variations of Mr. Watters' name turned up no responsive information, but the DOJ notified Mr. Watters that his records may be maintained by the EOUSA.  Later, upon realizing that other sections of the Criminal Division had not been searched, the DOJ conducted expedited searches of its Narcotics and Dangerous Drugs Section, Organized Crime Drug Enforcement Task Force, Office of Enforcement Operations FOIA/PA Unit, and Electronic Surveillance Unit, all of which yielded no records (other than Mr. Watters' FOIA requests).  Mr. Cunningham deduced this was because Mr. Watters was prosecuted by the U.S. Attorney's Office, not the DOJ.

Peter J. Chisholm, Acting Chief of the Disclosure Division for the ATF, submitted a declaration attesting that the ATF had received a referral of 16 documents from the FBI consisting of one page each.  All of these documents were withheld under exemption (b)(3) of the FOIA, *see* 5 U.S.C. § 552(b)(3) (exempting certain information protected from disclosure by statute), because the documents "consisted of [firearms] trace data," R., Vol. I at 292.  Mr. Chisholm acknowledged that the ATF could not locate any records relating to the FBI's original referral.  However, Mr. Chisholm explained that when Mr. Watters filed his complaint, the ATF searched its FOIA database and confirmed that it had received and denied the referral.  Nevertheless, because those documents had been lost, the

ATF undertook a thorough examination of its office, searching all of its 2011 files and the work spaces of its Disclosure Specialists, a paralegal, and a retired team leader. Because the original referral documents were not found, the ATF requested copies from the FBI and verified that all 16 documents were exempt. The ATF also searched its communications system database and case management system but found no responsive information. The ATF declined to search for or release any third-party records concerning Ms. Quisenberry, Mr. Harris, or Mr. Jones, citing Exemption 7(C). *See* 5 U.S.C. § 552(b)(7)(C) (exempting law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy").

As for the IRS, Carlton King, an attorney in the IRS's Office of the Chief Counsel, submitted a declaration stating that the IRS had received a 58-page referral from the EOUSA and a 12-page referral from the FBI. The IRS eventually released all of these materials to Mr. Watters, and he did not independently request any other information. Consequently, no further search was conducted.

We conclude, based on the forgoing declarations, that Defendants satisfied their burden to conduct reasonably adequate searches.

*D. Exemptions*

This brings us to the exemptions challenged by Mr. Watters. He first seems to contest the withholding of information under FOIA Exemptions 6 and 7(C). *See* 5 U.S.C. §§ 502(b)(6), (b)(7)(C). Exemption 6 allows an agency to withhold "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy." *Id.*, § 502(b)(6).

Exemption 7(C) allows an agency to withhold "records or information compiled for

law enforcement purposes, but only to the extent that the production of such law

enforcement records or information . . . could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 502(b)(7)(C).[2] Both of these

exemptions protect third-party privacy interests and both require that we balance the

public interest in disclosure against the privacy interest at stake. *See Trentadue*,

501 F.3d at 1232-36.

Here, the FBI and the ATF invoked Exemptions 6 and 7(C) to withhold the

names and identifying information of many individuals, including FBI special agents,

an assistant U.S. Attorney, a U.S. Marshal Service employee, a Federal Correctional

Institution employee, an investigator for the New Hampshire Attorney General's

Office, third-parties of investigative interest, state and local law enforcement

employees, and third-parties who provided information to the FBI or were merely

mentioned during the course of Mr. Watters' investigation. Notwithstanding the

compelling privacy interests of these individuals, Mr. Watters seems to contend that

the public interest weighs in favor of disclosure so that he can obtain what he

believes to be exculpatory information and prove his innocence. He contends the

---

[2] We have adopted a per se rule that all records and information compiled by a law enforcement agency are "compiled for law enforcement purposes." *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1197 (10th Cir. 2011) (internal quotation marks omitted).

public has an interest in knowing about the government's wrongdoing in procuring Ms. Quisenberry's testimony and failing to investigate Mr. Jones and Mr. Harris. We perceive at least three problems with this argument.

First, as the district court observed, Mr. Watters has provided no evidence of government wrongdoing. *See Martin v. Dep't of Justice*, 488 F.3d 446, 458 (D.C. Cir. 2007) ("'If the public interest is government wrongdoing, then the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" (quoting *Boyd v. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007)). Instead, Mr. Watters merely makes "unsubstantiated assertions of government wrongdoing," which is insufficient to establish a public interest weighing in favor of disclosure. *Id.* (internal quotation marks omitted). Second, Mr. Watters fails to establish a public interest sufficient to overcome the significant privacy interest that third-parties have in preventing disclosure of investigative material. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (holding that "an obvious privacy interest . . . extends to third parties who may be mentioned in investigatory files, as well as to witnesses and informants who have provided information during the course of an investigation"). And third, Mr. Watters offers nothing to suggest that disclosure would contribute to the public's understanding of Defendants' activities; instead, he asserts his own personal interest in securing his release. *See Trentadue*, 501 F.3d at 1233 ("We must assess the extent to which disclosure would contribute to the public

understanding of the operations or activities of the government, not the interests of the requesting party." (internal quotation marks omitted)).  Under these circumstances, Defendants properly withheld the names and identifying information of law enforcement officers and other third parties under Exemptions 6 and 7(C).

Turning to Exemption 7(A), it allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 502(b)(7)(A).  The FBI withheld eight pages under Exemption 7(A), claiming the documents "contain information on a third party of interest who is currently in fugitive status."  R., Vol. I at 230.  The FBI averred that disclosing this information could compromise an open investigation, and thus it invoked Exemption 7(A) to prevent disclosure.  On appeal, Mr. Watters acknowledges that a third party is an active fugitive, though he questions whether there is an ongoing effort to capture the fugitive.  Mr. Watters contends that Exemption "7(A) is not available where agents, as in this case[,] simply go through the motions."  Aplt. Br. at 38.  This is insufficient to establish that the undisclosed material was improperly withheld under Exemption 7(A).

Lastly, Exemption 7(D) allows an agency to withhold information prepared for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . .,

information furnished by a confidential source." 5 U.S.C. § 502(b)(7)(D). The FBI invoked this exemption to "withhold information provided by commercial/private companies and other non-government entities under an expressed assurance of confidentiality." R., Vol. I at 231. Mr. Watters does not argue that the exemption was inapplicable for this purpose. Instead, he contends that Exemption 7(D) is not available where the "names [of the confidential sources] (Jones, Quisenberry, Harris) are well known." Aplt. Br. at 39. But at least one court has held that "the protections of 7(D) apply even if a confidential source is later revealed." *Rimmer v. Holder*, 700 F.3d 246, 253 n.4 (6th Cir. 2012). Mr. Watters retorts that he only wants to know "what interaction (if any) these criminals had with Government agents," Aplt. Br. at 39, but this does not address the propriety of the exemption for the purposes claimed here. Thus, the district court properly granted Defendants' motion for summary judgment.[3]

Accordingly, the judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[3] To the extent Mr. Watters raises any segregability issue, we have reviewed the record and agree with the district court's conclusion that Defendants have "adequately specif[ied] 'which portions of the document[s] are disclosable and which are allegedly exempt.'" R., Vol. I at 387 (quoting *Vaughn*, 484 F.2d at 827).